UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| John Doe, | ) |
|       *Plaintiff*, | ) |
| v. | ) No. 2:22-CV-4164 SRB |
| Advanced Correctional Healthcare, et al., | ) |
|       *Defendants*. | ) |

**Plaintiff's Reply Suggestions in Support of Motion for Preliminary Injunction**

Defendants delayed Plaintiff's HIV treatment for five months and have since caused it to lapse twice (not just for a single day as they claim). The initial delay and subsequent lapses have the same impermissible root: Plaintiff's inability to pay.[1] (*See* Ex. 5, Jan. 21, 2022 fax containing Weaver note dated Jan. 26, 2022; Ex. 6, Hill note dated Jan. 26, 2022; Ex. 7, Grievances and Requests at 5, 10, 27; Ex. 8, Hill September-October email exchange with Phoenix Programs.)

It is well established that conditioning lifesaving medical treatment on ability to pay is a constitutional violation. *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983); *Hartsfield v. Colburn*, 371 F.3d 454, 457–58 (8th Cir. 2004); *Simmons v. Norwood*, No. 1:13-cv-01017, 2016 WL 410947, at *9 n.2 (W.D. Ark. Jan. 14, 2016) ("It is clearly established that a prison official may not deny an inmate medical care based on his inability to pay for the medical care."). All

---

[1] ACH Defendants assert that the Medical Administration Record indicates that Plaintiff missed only one dose of his medication. This is incorrect. What the Medical Administration Record actually shows is that he missed multiple doses of his medication, as he stated in his declaration. *See* Ex. 8; *see also infra* at 5.

1

Defendants have contributed to that grave violation of Plaintiff's rights. All Defendants have failed to act, at least in large part, because Plaintiff could not pay.

In their opposition, ACH Defendants repeatedly downplay their duty as medical providers and disclaim responsibility for the failures to treat Plaintiff's HIV, pointing the finger at the County Defendants. But ACH personnel are themselves state actors for purposes of this lawsuit. *Davis v. Buchanan Cnty.*, 11 F.4th 604, 617 (8th Cir. 2021). They have their own constitutional duties to patients like Plaintiff. *Id.* (holding that ACH physicians who provide medical care to incarcerated people within a county jail may be sued under Section 1983); *see also id.* at 621. The evidence demonstrates that ACH physician Alan Weaver tied his infectious-disease referral not only to his purported inability to treat Plaintiff but to Plaintiff's ability to pay at least as early as January 26, 2022. (*See* Ex. 5 (containing handwritten note by Weaver that states "needs infectious disease for consult; needs to set up payment c̄ [with] appointment"); *see also* Ex. 8 at 5 (stating "I was told yesterday that I was being denied medicine because of inability to pay. This is medicine that is without dispute necessary for my survival and for my illness not to get any worse"), 10 (asking "[m]ay I have a copy of my test results and the name of the medicines that the doctor would prescribe if I could afford them"), 27 (stating that his illness was "being untreated because of a deliberate indifference because of my socioeconomic level"); *see also* Ex. 8 at 22 (describing symptoms consistent with untreated HIV and Defendant Hill responding "Ill print this out show our doctor and see what he says").

Current ACH physician Lyman Wostrel likewise knew of Plaintiff's serious medical condition (a fact that is not disputed) and failed to treat him until outside funding was secured. (*See* Ex. 8 at 27 (grievance to which Defendant Hill responds "when I meet the new doctor ill readdress issues that the other doctor didn't provide" (capitals omitted).) ACH medical

2

personnel, as well as Pettis County, knew of Plaintiff's diagnosis by at least January 21, 2022. (*See* Ex. 5.) Because a physician must approve outside medications, *see* ACH Opp., ECF. No. 31 at 5, they also knew he was not getting treatment for months following his diagnosis. Plaintiff has a fair chance of succeeding in demonstrating that all Defendants have been deliberately indifferent to his serious medical need. *See* ECF. No. 3 at 7–13 (setting forth legal standards); *Hartsfield*, 371 F.3d at 457 (denying summary judgment where doctor allowed a six-week delay in dental care after inmate's written request and collecting cases); *see also Richey v. Ferguson*, No. 05-CV-5162, 2007 WL 710129, at *20 (W.D. Ark. March 6, 2007) (holding that it would be constitutional violation if failure to treat HIV was motivated solely by cost considerations and denying summary judgment to doctor and sheriff where inmate "maintains [doctor] chose to forego a number of [HIV] prescriptions solely because of the cost to the facility" and the doctor's "notes bear out, at least in part, [the inmate's] claim").

In addition, ACH and Pettis County signed a new medical-services contract on September 9, 2022. (*See generally* Ex. 9.) Under the current contract, ACH is providing a nurse who works full-time at the Pettis County Jail, where she reviews all medical requests and is responsible for ordering and distributing most medications. Thus, it is now an ACH nurse who is responsible for ordering Plaintiff's ART drug Biktarvy. (*See* Ex. 8 at 45 (Pettis County staff stating October 24, 2022, that ACH nurse orders medications.) Because their employees play a role in ordering and distributing medications, and because they are the only medical staff on site who will respond if there is a complication of Plaintiff's HIV (Ex. 9 at 1.15.3 & 1.15.4) or secure alternate sources of medication if necessary (*Id.* at 1.12, 1.14), ACH should be enjoined to provide Plaintiff with continuing, consistent, and uninterrupted access to HIV treatment.

3

Bizarrely, ACH Defendants argue a preliminary injunction is not needed because Plaintiff's health "actually improved" once outside funding was secured and Defendants allowed him to access HIV treatment. (ECF No. 31 at 7.) Of course it did. By the time Defendants took him to a doctor, Plaintiff had AIDS. (ECF No. 3-3 ¶ 6.) HIV is a serious medical need for which daily antiretroviral therapy is necessary to avoid risk of opportunistic infection and death. (*See* ECF No. 3 at 5, 9–10.) Far from supporting ACH Defendants' argument that there is no risk of future harm, that improvement demonstrates how crucial it is that Plaintiff receive continued, consistent, and uninterrupted treatment. The Constitution does not permit treatment to be conditioned on whether Plaintiff can personally (or through an outside funding source) pay for it. *See, e.g.*, *Benter v. Peck*, 825 F. Supp. 1411, 1420 (S.D. Iowa 1993) ("The law in this circuit was clearly established in 1991: The withholding of treatment for a serious medical need in order to compel payment constitutes deliberate indifference in violation of the Eighth Amendment."). Interruption in that necessary lifesaving treatment is not speculative; to the contrary, it has happened twice, for periods long enough to cause drug resistance and thereby reverse that hard-won improvement from AIDS to viral suppression.[2] (*See* ECF No. 3-3 ¶ 10; 3-4 ¶ 7.) And those interruptions have been caused, at base, by conditioning treatment on payment by the outside funder. When there have been complications in approving payment, Defendants have failed to provide Plaintiff access to his medication.

---

[2] Plaintiff appreciates Defendants Pettis County and Sheriff Brad Anders accepting their responsibility to provide him with continuing, consistent, and uninterrupted care and this Court's issuance of the Consent Order. However, it is worth nothing that the filed opposition stated there was a sufficient supply of medication to last through Plaintiff's sentencing date mid-January. There is unfortunately no evidence in the record to support this statement. The evidence instead suggests that the prescription yields a 30-day supply of Biktarvy each month, which would have to be filled at least one additional time before mid-January.

At Plaintiff's November 8, 2022, follow-up with University of Missouri physicians, he reported a lapse in access to medication. (*See* Ex. 13 at 1.) Because of the risk of drug resistance, the physicians did additional testing through Mayo Clinic. Plaintiff has not been informed of those results.

ACH Defendants quote Plaintiff's expert pharmacist's characterization of the medical records from his August 9, 2022 appointment to support their position that Plaintiff's health has improved. (ECF No. 3-4 ¶ 9; Opp. at 8.) The appointment reviewed by pharmacist Smith occurred long before the second, longer lapse between September 29 and October 4, 2022. Further, as noted, ACH Defendants' contention that the Medication Administration Record shows no lapses or a single lapse of one day is false: Dr. Wostrel apparently did not consider the key codes used by Pettis County Jail staff.[3] Under the key (*see, e.g.,* Ex. 10 at 2, 4, 6), staff are to input a "6" if the medication is out of stock and therefore not provided to an inmate. There are 6s entered in each square between September 29 and October 4, 2022. (*See id.* at 15, 17.) Those dates line up exactly with the dates provided in Plaintiff's declaration. (*See* ECF No. 3-1 ¶ 57.)

The lapse is further supported by the email exchange between Defendant Sierra Hill, Pettis County Medical Officer, and personnel at Phoenix Programs, the outside funder of Plaintiff's HIV treatment, which acknowledge there will be a gap in medication availability due to a billing approval needed by the University of Missouri pharmacy. (*See* Ex. 7; *see also* Ex. 8 at 45–47 (grievances September 29 and 30 stating that he had not received Biktarvy and specifically pointing out that "[m]issing dosages is harmful for many factors including the creation of resistance factors"). ACH Defendants, who supposedly by contract have "the freedom to provide care without limitation by approval process for outside care" and "the freedom to provide care without limitation by prescription formulary [or] corporate approval for expensive medication," did not assist in covering that gap. (*See* Ex. 9 at 1.12, 1.14; *see also* Ex. 11, Hill narrative progress note exploring other drug sources.)

---

[3] The error in Dr. Wostrel's affidavit is particularly concerning because it suggests he has never reviewed a Medical Administration Record before this case to determine if medication doses are being missed for any reason.

5

ACH Defendants knew about and ignored Plaintiff's symptoms that were consistent with untreated HIV, both before and after Plaintiff was tested. (*See* Ex. 8 at 2, 3, 10, 15, 17, 22, 38–42 (last grievances about symptoms during first lapse in treatment).) ACH Defendants did not act despite the fact that they had multiple opportunities to made decisions that would have secured treatment for Plaintiff in a timely and constitutional manner. (*See* Ex. 12, Inmate Note written by correctional officer who stated on April 14, 2022, that he "advised [Plaintiff] that the doctor's decisions were completely out of my control" and "doctors visits are out of my control").) ACH doctors approve medication and therefore knew no outside medication was coming in to treat Plaintiff's HIV yet did nothing. They did not act despite knowing they are the people with the most medical training and expertise at the jail. *See Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) (holding that where prison officials lack medical expertise, they are entitled to rely upon medical professional's medical opinion). ACH personnel did not act despite having knowledge of Plaintiff's exposure, diagnosis, symptoms, and repeated, increasingly desperate pleas for help. (*See, e.g.*, Ex. 5; Ex. 8 at 17, 22, 27.)

Despite their constitutional duty to provide care to Plaintiff, Defendants have failed to fulfill their constitutional duty to protect Plaintiff from a serious risk of substantial bodily harm. Contrary to ACH Defendants' argument, Plaintiff need not wait until that risk materializes into a fatal infection to obtain relief. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("rejecting [the defendants'] central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment" and remarking "that the Eighth Amendment protects against future harm to inmates is not a novel proposition"). Contrary to ACH Defendants' argument, the Supreme Court has already concluded that state actors may not be "deliberately indifferent to the exposure of inmates to a serious, communicable disease on the

ground that the complaining inmate shows no serious current symptoms." *Id.* (Of course, Plaintiff already has experienced both symptoms and immune-system impairment.)

In short, ACH Defendants have previously and repeatedly failed to respond to Plaintiff's HIV symptoms and need for treatment and have acquiesced in conditioning access to treatment on Plaintiff's ability to pay. If ACH Defendants again fail to respond to HIV complications or if their nurse (now in the position of Defendant Hill and responsible for reviewing medical requests and ordering medication) again conditions access to medication on Plaintiff's ability to pay by waiting for outside funding approval before even placing the monthly order on an existing prescription, it will be too late to prevent another lapse in care. After decades of scientific progress, HIV—once, not long ago, a death sentence—can now be managed with daily oral medication. (*See, e.g.*, ECF No. 3-4 ¶¶ 6, 7.) Despite all the failures up to this point, all Defendants have to do now, for the remainder of the time Plaintiff is in their care, is ensure his HIV remains treated.

For these reasons, Plaintiff respectfully asks that the Court grant his motion for a preliminary injunction against ACH Defendants and grant such other relief which the Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Jessie Steffan
JESSIE STEFFAN, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org
mcarney@aclu-mo.org

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
406 W 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF

## Certificate of Service

I hereby certify that on December 14, 2022, a true and correct copy of the foregoing motion was electronically filed using the Court's CM/ECF online case filing system, where it will appear to all counsel of record.

/s/ Jessie Steffan